UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NIKO CARTER,

Plaintiff,

v.

COUNTY OF ERIE; DEPUTY SHERIFF GERALD KEICHER, Individually and in his Official Capacity; DETECTIVE ADAM IMIOLO, Individually and in his Official Capacity; CHIEF DANIEL J. GRANVILLE, Individually and in his Official Capacity; DETECTIVE DANIEL MILBRANDT, Individually and in his Official Capacity; SENIOR DETECTIVE SHAUN HEDIGER, Individually and in his Official Capacity; DETECTIVE JUSTIN BAUER, Individually and in his Official Capacity; DEPUTY JACOB SIMONICK, Individually and in his Official Capacity; DEPUTY JACKIE FEGGANS, Individually and in her Official Capacity; ASSISTANT DISTRICT ATTORNEY RYAN D. HAGGERTY, Individually and in his Official Capacity; JOHN DOE ASSISTANT DISTRICT ATTORNEY #2, (fictitious name for an individual whose identity is presently unknown) Individually and in his Official Capacity; CHIEF JEFFREY HARTMAN, Individually and in his Official Capacity; and JANE DOE SUPERVISORY OFFICIALS #1-3, (fictitious names for individuals whose identities are presently unknown) Individually and in their Official Capacities,

Defendants.

FIRST AMENDED COMPLAINT

Civil Action No. 1:25-cv-00756-MAV-JJM

JURY TRIAL DEMANDED

Plaintiff, Niko Carter, by his attorneys, David Stern, Esq. and Christopher D. Monna, Esq., as and for his First Amended Complaint against the Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought by a former Erie County Sheriff's Deputy who was subjected to a coordinated campaign of retaliation after he reported a fellow officer's use of racial and homophobic slurs directed at inmates and at Plaintiff himself. Within weeks of Plaintiff's protected report, the Erie County Sheriff's Department — rather than disciplining the offending officer — launched a baseless criminal investigation against Plaintiff, arrested him on fabricated charges, prosecuted him for nearly eight months, destroyed exculpatory evidence, and ultimately terminated his employment. Every criminal charge was dismissed. This First Amended Complaint names the individual officers, detectives, prosecutors, and supervisors responsible for these constitutional violations.

## JURISDICTION AND VENUE

2. This action arises under the Constitution and laws of the United States, particularly the First, Fourth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1981, 1983, and 1985. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

5. Plaintiff has complied with the conditions precedent set forth in New York General Municipal Law §§ 50-e and 50-i. Plaintiff timely served a Notice of Claim upon the appropriate municipal defendants, a copy of which is dated September 22, 2024; more than thirty days have elapsed since such service; and the municipal defendants have neglected or refused to make

adjustment or payment of the claim. This action was commenced within one year and ninety days after the claims accrued.

## PARTIES

6. Plaintiff Niko Carter ("Plaintiff" or "Carter") is an individual residing in Cheektowaga, Erie County, New York. At all relevant times until his termination, Plaintiff was employed as a Deputy Sheriff by the County of Erie. Plaintiff is a person of color.

7. Defendant County of Erie ("County") is a municipal corporation organized and existing under the laws of the State of New York, responsible for the operation of the Erie County Sheriff's Department and the Erie County District Attorney's Office. The County is sued herein for its policies, customs, and practices, and for its failure to adequately train, supervise, and discipline its employees, including those in the Sheriff's Department and District Attorney's Office, which caused the violations of law alleged herein.

8. Defendant Deputy Sheriff Gerald Keicher ("Keicher") is, upon information and belief, an individual employed as a Deputy Sheriff by the County of Erie. He is sued individually and in his official capacity. At all relevant times. Keicher was acting under color of state law.

9. Defendant Detective Adam Imiolo ("Imiolo") is an individual employed as a Detective in the Narcotics and Intelligence Unit of the Erie County Sheriff's Office. He is sued individually and in his official capacity. At all relevant times, Imiolo was acting under color of state law. Imiolo was the lead investigating detective in the criminal investigation of Plaintiff and is substituted herein for John Doe Deputy Sheriff #1.

10. Defendant Chief Daniel J. Granville ("Granville") is an individual employed as Chief of the Narcotics and Intelligence Unit of the Erie County Sheriff's Office. He is sued individually and in his official capacity. At all relevant times. Granville was acting under color of state law.

Granville commanded the arrest operation and conducted the custodial interrogation of Plaintiff and is substituted herein for John Doe Deputy Sheriff #2.

11. Defendant Detective Daniel Milbrandt ("Milbrandt") is an individual employed as a Detective in the Narcotics and Intelligence Unit of the Erie County Sheriff's Office. He is sued individually and in his official capacity. At all relevant times, Milbrandt was acting under color of state law. Milbrandt was an arresting officer, the booking officer, and the affiant on multiple search warrant applications and is substituted herein for John Doe Deputy Sheriff #3.

12. Defendant Senior Detective Shaun Hediger ("Hediger") is an individual employed as a Senior Detective in the Narcotics and Intelligence Unit of the Erie County Sheriff's Office. He is sued individually and in his official capacity. At all relevant times, Hediger was acting under color of state law. Hediger supervised aspects of the investigation, conducted surveillance, and submitted evidence to the forensic laboratory and is substituted herein for John Doe Deputy Sheriff #4.

13. Defendant Detective Justin Bauer ("Bauer") is an individual employed as a Detective in the Narcotics and Intelligence Unit of the Erie County Sheriff's Office. He is sued individually and in his official capacity. At all relevant times, Bauer was acting under color of state law. Bauer was an arresting officer and is substituted herein for John Doe Deputy Sheriff #5.

14. Defendant Deputy Jacob Simonick ("Simonick") is an individual employed as a Deputy Sheriff in the Patrol and Police Services Division of the Erie County Sheriff's Office. He is sued individually and in his official capacity. At all relevant times, Simonick was acting under color of state law. Simonick participated in the traffic stop of Plaintiff, personally handcuffed Plaintiff, and transported him to 45 Elm Street for interrogation, and is substituted herein for John Doe Deputy Sheriff #6.

15. Defendant Deputy Jackie Feggans ("Feggans") is an individual employed as a Deputy Sheriff by the Erie County Sheriff's Office. She is sued individually and in her official capacity. At all relevant times, Feggans was acting under color of state law. Feggans was identified as one of the arresting officers on the People's notice served pursuant to N.Y. Criminal Procedure Law § 710.30 in connection with Plaintiff's October 2, 2023 arrest. On that date, Feggans personally obtained a purported oral statement from Kaylah Campbell while Campbell was seated in the rear of patrol car 22, which statement the People later relied upon in the prosecution of Plaintiff. Feggans is substituted herein for John Doe Deputy Sheriff #7.

16. Defendant Assistant District Attorney Ryan D. Haggerty ("Haggerty") is an individual employed as an Assistant District Attorney by the Erie County District Attorney's Office. He is sued individually and in his official capacity for actions taken in a purely investigative capacity prior to the establishment of probable cause, where he functioned as an investigative advisor to the Sheriff's Department. Haggerty directed the pre-indictment investigation, including advising Sheriff's Department personnel on evidence-gathering and making investigative judgments before probable cause existed, and is substituted herein for John Doe Assistant District Attorney #1.

17. Defendant John Doe Assistant District Attorney #2 is an individual employed as an Assistant District Attorney by the Erie County District Attorney's Office whose identity is presently unknown to Plaintiff and who participated, in a purely investigative capacity prior to the establishment of probable cause, in the pre-indictment investigation of Plaintiff. Plaintiff sues this defendant individually and in his or her official capacity and reserves the right to seek further amendment to substitute the individual's true name upon identification.

18. Defendant Chief Jeffrey Hartman ("Hartman") is an individual employed as a Chief in the Jail Management Division of the Erie County Sheriff's Office, who served as the Grievance Coordinator for the Erie County Holding Center. He is sued individually and in his official capacity. At all relevant times, Hartman was acting under color of state law. Hartman denied the inmate grievances regarding Keicher's racial slurs and ratified Keicher's conduct and is substituted herein for Jane Doe Supervisory Official #1.

19. Defendants Jane Doe Supervisory Officials #1-3 are individuals employed in supervisory capacities by the County whose identities remain unknown to Plaintiff despite diligent discovery efforts. They are sued individually and in their official capacities for their roles in establishing, maintaining, or condoning the unconstitutional policies and practices, and for their failure to adequately train, supervise, and discipline subordinate employees, as described herein. Plaintiff specifically seeks to identify the individual(s) who made or approved the decision to terminate Plaintiff's employment on August 19, 2024, and reserves the right to seek further amendment upon identification.

## FACTUAL ALLEGATIONS

A. Plaintiff's Employment and the July 5, 2023 Incident

20. Plaintiff was employed as an Erie County Sheriff's Deputy assigned to the Jail Management Division at the Erie County Holding Center.

21. On or about July 5, 2023, while on duty at the Erie County Holding Center, Plaintiff Carter witnessed Defendant Keicher engage in conduct that Plaintiff reasonably believed to be inappropriate and in violation of department policies and law. Specifically, during an incident involving the removal of fans from the Echo Short housing area, Defendant Keicher used the

word "Nigger" in the presence of inmates and Plaintiff. Defendant Keicher also directed a homophobic slur, "fagot," at Plaintiff Carter.

22. Defendant Keicher's own written memorandum to Sergeant Scanio, dated July 5, 2023, admits that when an incarcerated individual shouted "bring that fan back you punk ass Nigga." Keicher stopped and said, "I'm a punk ass Nigga!" — thereby repeating the racial slur.

23. Multiple incarcerated individuals filed grievances about Keicher's conduct. Inmate Carvis McCutcheon filed Grievance 23G-125, stating that "on July 5th 2023 Officer Kraicht came out his mouth and used a baser word when he called me and few other black inmate a (Nigger) just the way I spelled it with the er on the end." Inmate Marquez Mack filed Grievance 23G-124, stating that Keicher "said the word 'Nigger's' to us." Inmate Shawn Hussar filed Grievance 23G-123, stating that he "heard officer Krachers call the black inmates (NIGGER)."

24. Plaintiff Carter, in accordance with his duties and in exercise of his First Amendment rights, reported Defendant Keicher's conduct to his superior, Sergeant Mark Scanio. Plaintiff also documented the incident in a written memorandum. This report constituted protected speech and an activity protected under federal and state anti-discrimination and whistleblower laws.

B. The Cover-Up of Keicher's Conduct

25. Rather than disciplining Defendant Keicher, the Erie County Sheriff's Department covered up his misconduct. Defendant Hartman, serving as Grievance Coordinator, denied all three inmate grievances on July 13, 2023, concluding that "Investigation has determined conclusively that Deputy Keicher did not direct any racial slurs towards any inmates." This conclusion was reached despite Keicher's own written admission that he repeated the racial slur, and despite the consistent testimony of multiple inmates.

26. The grievance investigation was cursory and predetermined. Sergeant Paul Rott, the Grievance Investigator, interviewed only one inmate — David Williams — who stated he did not hear Keicher use a slur. The investigation did not interview the three inmates who filed grievances, did not interview Plaintiff Carter (who was present and heard the slur), and did not address Keicher's own written admission.

C. The Retaliatory Investigation of Plaintiff

27. Following Plaintiff's protected report, Defendants initiated a campaign of retaliation against Plaintiff. This retaliation included Plaintiff being targeted for a criminal investigation based on the uncorroborated allegations of a single inmate informant with 49 prior criminal convictions.

28. In or around September 2023, Defendants Imiolo, Granville, Hediger, Milbrandt, and Bauer, acting under color of state law and in concert with the County, launched a criminal investigation of Plaintiff based on allegations made by Erica Bradley, an inmate at the Erie County Holding Center with an extensive criminal history including 49 prior convictions for theft, drug, prostitution, and fraud-related offenses.

29. Defendants Imiolo and Milbrandt obtained and executed multiple search warrants based upon Bradley's uncorroborated statements, including warrants to search Plaintiff's home, vehicle, person, phone, bank accounts, CashApp account, and work locker. No physical evidence corroborating the alleged crimes was collected from any of these searches.

30. Defendant Haggerty, acting in an investigative capacity, directed the pre-indictment investigation, including advising Sheriff's Department personnel on evidence gathering, reviewing evidence, and making legal judgments about the investigative path forward at a time when his function was not that of an advocate but of an investigator helping to build a case.

31. Defendant Haggerty subpoenaed Block Inc. (CashApp) records on September 22, 2023. The records were received by the District Attorney's Office on September 28, 2023, but were never reviewed and were allowed to become inaccessible — a fact that was not disclosed until March 2024.

32. Daniel J. Granville served as Chief of Narcotics and Intelligence for the Erie County Sheriff's Office at all times relevant to this action. In that capacity, Granville commanded the investigation and arrest operation targeting Plaintiff, directed the custodial interrogation of Plaintiff on October 2, 2023, and was the senior law enforcement official responsible for the retaliatory campaign described herein.

33. On April 11, 2024 — while still serving as Chief of Narcotics and Intelligence, and while Plaintiff's criminal case remained pending — Granville drove a county-owned Dodge Ram pickup truck on a destructive path through Buffalo's West Side, crashing into seven parked vehicles on multiple streets, causing at least $70,000 in property damage to civilian vehicles and totaling the county-owned truck.

34. Witnesses reported that Granville appeared visibly intoxicated at the scene. Beer bottles were observed littering the floor of his county-owned pickup. Despite these circumstances, Granville was not administered a sobriety test by responding officers.

35. Buffalo Police Lieutenant Lucia Esquilin, Granville's sister-in-law, responded to the scene and supervised the crash investigation in violation of department protocol prohibiting officers from supervising incidents involving family members. Esquilin signed her name to the bottom of police reports related to the incident.

36. At the time of the crashes, Granville faced no criminal charges. He was initially ticketed only for driving the wrong way down a one-way street, and that ticket was subsequently reduced to jaywalking, for which he paid a $150 fine.

37. The incident remained concealed from the public for approximately eleven months, until investigative journalists published their findings in March 2025. Only after public exposure did law enforcement take further action.

38. Following the public disclosure, the Erie County District Attorney recused himself from the investigation because Granville's sister-in-law, Kristen Granville, is employed as a legal secretary in the District Attorney's Office. A special prosecutor from the Niagara County District Attorney's Office was appointed.

39. The special prosecutor reported that none of the five Buffalo Police officers who responded to the scene of the crashes cooperated with his investigation — a circumstance the special prosecutor described as unprecedented in his career.

40. On August 15, 2025, Granville pleaded guilty in Buffalo City Court to one misdemeanor count of reckless driving and one count of leaving the scene of a property damage accident. He was sentenced to 50 hours of community service and fines totaling approximately $700. He received no jail time.

41. Following Granville's guilty plea, Sheriff John Garcia suspended Granville without pay for 30 working days. Granville was ordered to pay $75,881 in restitution to the County for damages to civilian vehicles and the county-owned truck.

42. The special prosecutor also determined that Granville was off duty at the time of the crashes, despite the Sheriff's Office having claimed otherwise for months — a misrepresentation

that, if accepted, would have afforded Granville certain liability protections under state law and union contracts.

43. The Erie County Sheriff's Office released only a four-page internal investigative report, substantiating only two policy violations: failure to immediately report the crashes to superiors and "unbecoming conduct." By contrast, the Buffalo Police Department released thousands of pages of records and audio from its own internal investigation, which resulted in the discipline of five officers, including the demotion of Lieutenant Esquilin.

44. When questioned by Erie County legislators about why he continued to protect Granville, Sheriff Garcia stated publicly: "What kind of boss would I be if I took someone who's suffering from a mental wellness issue that has a stellar career and throw him out in the garbage?"

45. The Erie County Comptroller and multiple Erie County legislators called for an independent investigation by the New York State Attorney General into the incident and the alleged cover-up.

46. The County's handling of the Granville crash is directly relevant to this action because it demonstrates the County's policy and custom of protecting favored officials — including the very official who orchestrated the retaliatory investigation and arrest of Plaintiff — rather than holding them accountable for serious misconduct.

D. Plaintiff's Arrest on October 2, 2023

47. On or about October 2, 2023, Plaintiff was arrested by Defendants Imiolo, Granville, Milbrandt, Bauer, and Simonick, acting under color of state law and pursuant to the policies and customs of the County.

48. Defendant Simonick participated in a pretextual traffic stop of Plaintiff on Maryvale Drive in Cheektowaga. After Plaintiff stepped out of the vehicle, Simonick personally handcuffed him behind his back, placed him in the rear of his patrol vehicle, and transported him to 45 Elm Street for interrogation. Simonick did not activate his body-worn camera during the initial portion of the stop, in violation of department policy.

49. At 45 Elm Street, Defendants Granville and Imiolo conducted a custodial interrogation of Plaintiff. Defendant Granville read Plaintiff his Miranda warnings. Plaintiff indicated he understood his rights but refused to sign the written waiver, stating "I'm not signing that shit." Despite Plaintiff's refusal to waive his rights, Defendants Granville and Imiolo proceeded with questioning for approximately 40-45 minutes.

50. During the interrogation, Defendants Granville and Imiolo employed deceptive tactics, including falsely telling Plaintiff that Briana Banks had made statements implicating him.

51. Plaintiff was charged with Promoting Prison Contraband in the First Degree (PL § 205.25), Conspiracy in the Fourth Degree (PL § 105.10), and Official Misconduct (PL § 195.00).

E. The Malicious Prosecution

52. On or about October 26, 2023, Plaintiff was arraigned before Erie County Court on a four-count indictment charging Conspiracy in the Fourth Degree, Promoting Prison Contraband in the Second Degree, and two counts of Official Misconduct.

53. Defendant Haggerty presented the case to the grand jury, examining witnesses including Erica Bradley, Angel Castoire, Jeffrey Transki, Adam Imiolo, and Shaun Hediger.

54. The People filed their initial Certificate of Compliance on March 8, 2024, certifying that the People had exercised due diligence and made available all known discoverable material. This certification was false. Among other deficiencies:

(a) The Certificate listed 49 prior convictions of the confidential informant (Erica Bradley) without providing jurisdictions, docket numbers, or sentences imposed, rendering the information largely unusable for cross-examination;

(b) The People had received CashApp records from Block Inc. on September 28, 2023, but failed to disclose them and allowed access to expire;

(c) The People lost the phone dump evidence from both Plaintiff's phone and Briana Banks' phone, without explanation;

(d) The People failed to disclose body-worn camera footage from Deputy Simonick until April 30, 2024 — the day before the Huntley hearing.

55. On June 21, 2024, the Honorable James F. Bargnesi, J.C.C., dismissed the entire indictment, finding that the People's statement of readiness was illusory, that the People failed to show they exercised due diligence prior to filing their certificates of compliance, and that the People exceeded the six months permitted by CPL 30.30 to declare readiness for trial. The Court found that 211 total days were chargeable to the People.

56. Prior to the dismissal, two counts of the indictment (Promoting Prison Contraband and one count of Official Misconduct) had already been dismissed based upon legally insufficient evidence.

F. Destruction of Exculpatory Evidence

57. During the investigation, Plaintiff voluntarily surrendered his cell phone and consented to a search. Law enforcement performed an extraction of the phone's data. The extraction results were subsequently lost or destroyed by the Erie County Sheriff's Office, without explanation.

58. Law enforcement also lost the phone dump from Briana Banks' phone. This evidence was critical because it would have disproved Bradley's claims that Plaintiff was using Banks' CashApp profile to receive payments from inmates.

59. The People's supplemental certificate of compliance, filed March 22, 2024, disclosed for the first time that the phone extraction results had been lost, but provided no explanation of how, when, or by whom the evidence was lost or destroyed.

G. Plaintiff's Termination

60. On or about August 19, 2024, Plaintiff was terminated from his employment by the County of Erie as a further act of retaliation and as a result of the Defendants' unlawful actions. The termination occurred less than two months after all criminal charges were dismissed.

H. Plaintiff's Damages

61. As a direct and proximate result of Defendants' actions, Plaintiff suffered shame, humiliation, indignity, damage to reputation and credit, violation of his civil rights, mental anguish, emotional distress, suffering, and psychological injuries, some or all of which are permanent in nature. Plaintiff expended large sums of money for counsel fees and the cost of defense, suffered lost wages, and lost faith in his former employer and the government in administering justice.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. § 1983 — First Amendment Retaliation)

(Against Defendants Keicher, Imiolo, Granville, Milbrandt, Hediger, Bauer, Simonick, Feggans, Hartman, Jane Doe Supervisory Officials, and County)

62. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

63. Plaintiff's report on or about July 5, 2023, concerning Defendant Keicher's conduct, including the use of racial and homophobic slurs, constituted speech on a matter of public concern protected by the First Amendment.

64. Defendants, acting under color of state law and in concert with the County, took adverse actions against Plaintiff, including but not limited to targeting him for investigation, false arrest, malicious prosecution, and termination, because of his protected speech.

65. These adverse actions would deter a person of ordinary firmness from continuing to engage in such protected speech.

66. As a direct and proximate result of these retaliatory actions, Plaintiff suffered damages as set forth above.

SECOND CAUSE OF ACTION

(Violation of 42 U.S.C. § 1983 — False Arrest — Fourth Amendment)

(Against Defendants Imiolo, Granville, Milbrandt, Bauer, Simonick, Hediger, and County)

67. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

68. On or about October 2, 2023, Defendants Imiolo, Granville, Milbrandt, Bauer, Simonick, and Hediger, acting under color of state law and pursuant to the policies and customs of the County, arrested Plaintiff without probable cause to believe that Plaintiff had committed any crime.

69. Plaintiff was intentionally confined, against his will, and was aware of said confinement.

70. As a direct and proximate result of this false arrest, Plaintiff suffered damages as set forth above.

THIRD CAUSE OF ACTION

(Violation of 42 U.S.C. § 1983 — Malicious Prosecution —
Fourth and Fourteenth Amendments)

(Against Defendants Imiolo, Granville, Milbrandt, Hediger, Bauer, Haggerty, John Doe Assistant District Attorney #2, and County)

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

72. Defendants initiated and continued a criminal prosecution against Plaintiff without probable cause and with malice.

73. The criminal proceedings were instituted with actual malice, for a purpose other than bringing an offender to justice, including retaliation for Plaintiff's protected speech and/or due to his race.

74. The criminal proceedings against Plaintiff terminated in his favor on or about June 21, 2024, when all charges were dismissed.

75. As a direct and proximate result of this malicious prosecution, Plaintiff suffered a deprivation of liberty and other damages as set forth above.

FOURTH CAUSE OF ACTION

(Violation of 42 U.S.C. § 1983 — Due Process Violations — Fourteenth Amendment)

(Against Defendants Imiolo, Granville, Milbrandt, Hediger, Bauer, Haggerty, John Doe Assistant District Attorney #2, and County)

76. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

77. Defendants deliberately fabricated evidence, withheld material exculpatory evidence (including Brady material such as lost phone dumps), and/or used unreliable informant testimony to secure Plaintiff's arrest and prosecution, thereby depriving him of his right to due process of law under the Fourteenth Amendment.

78. As a direct and proximate result of these due process violations, Plaintiff suffered damages as set forth above.

FIFTH CAUSE OF ACTION

(Violation of 42 U.S.C. § 1983 — Monell Liability)

(Against Defendant County of Erie)

79. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this First Amended Complaint.

80. The constitutional violations suffered by Plaintiff were directly and proximately caused by the official policies, customs. and practices of Defendant County of Erie, which were maintained with deliberate indifference to the constitutional rights of its employees and the public, and which were the moving force behind the violations of Plaintiff's rights.

81. Upon information and belief, Defendant County of Erie, through its Sheriff's Department and District Attorney's Office, maintained a widespread, persistent, and well-settled custom of retaliating against law enforcement officers who engaged in protected speech by reporting misconduct. This custom includes, but is not limited to, targeting whistleblowers for unwarranted internal investigations, initiating fabricated criminal charges against them, and pursuing their wrongful termination.

82. The retaliatory treatment of Plaintiff was not an isolated incident but is consistent with this established custom. For example, in a strikingly similar case, Erie County Sheriff's Deputy Jeremiah Nolan alleged that he was subjected to retaliatory criminal charges, public defamation, and adverse employment action after he reported misconduct within the department, as set forth in the complaint in Nolan v. County of Erie, No. 1:19-cv-01245 (W.D.N.Y.). The

existence and allegations of that action are indicative of a pattern of using the criminal justice system as a tool for retaliation against those who report misconduct.

83. The County's custom of protecting favored officials while retaliating against whistleblowers is further demonstrated by its handling of the Granville crash. On April 11, 2024, Chief Granville — the same official who commanded the retaliatory investigation and arrest of Plaintiff — crashed a county-owned vehicle into seven parked cars on Buffalo's West Side, causing over $70,000 in damage. Despite witness reports that Granville appeared visibly intoxicated, he was not administered a sobriety test. His sister-in-law, a Buffalo Police lieutenant, supervised the crash scene in violation of department protocol. The incident was concealed from the public for nearly a year. When Granville ultimately pleaded guilty to reckless driving and leaving the scene of a property damage accident, the County imposed only a 30-day suspension and publicly praised his career. The Sheriff's Office released only a four-page internal report, while the Buffalo Police Department released thousands of pages of records from its own investigation. The special prosecutor reported that none of the five responding Buffalo Police officers cooperated with his investigation. Erie County legislators and the County Comptroller called for a state Attorney General investigation into the incident and the alleged cover-up.

84. The County's treatment of Granville — shielding him from accountability for serious criminal misconduct, concealing the incident from the public, and imposing only minimal discipline — stands in stark contrast to its treatment of Plaintiff, who was subjected to a retaliatory investigation, false arrest, malicious prosecution, and termination for reporting a fellow officer's use of racial slurs. This disparity demonstrates that the County's disciplinary apparatus is not applied neutrally but is instead deployed to protect favored officials and punish those who challenge misconduct.

85. This custom of retaliation is further enabled by a policy of failing to adequately train, supervise, and discipline officers and supervisors regarding First Amendment protections for whistleblowers. The County's failure to train its employees on the constitutional limits of internal investigations and the prohibition against retaliatory prosecution amounts to deliberate indifference, particularly in light of a known pattern of similar constitutional violations.

86. Upon information and belief, the County's deliberate indifference is further evidenced by a broader policy and custom of inadequate supervision and a lack of transparency and accountability within its law enforcement agencies. The County was on notice of systemic constitutional deficiencies within its jails and law enforcement operations through, among other things, a prior investigation and settlement with the United States Department of Justice. See United States v. Erie County, No. 1:09-cv-00849 (W.D.N.Y.). This custom of concealment is further evidenced by the Erie County Sheriff's Office's refusal to produce law enforcement disciplinary records pursuant to public records requests, resulting in litigation. See The New York Times Co. v. Erie County Sheriff's Office, Index No. 808556/2025 (Sup. Ct., Erie Cnty. 2025).

87. The County's final policymakers, including the Sheriff and District Attorney, knew or should have known of this custom of retaliation and the inadequate training and supervision that fostered it. By failing to take corrective action and instead ratifying the unconstitutional conduct of their subordinates — including by publicly defending Granville, minimizing his criminal conduct, and imposing only token discipline — they have endorsed a de facto policy of retaliation that was the moving force behind the violation of Plaintiff's constitutional rights.

88. As a direct and proximate result of these policies, customs, and practices, Plaintiff suffered damages as set forth above.

## SIXTH CAUSE OF ACTION

(Violation of 42 U.S.C. § 1981 — Race Discrimination)

(Against Defendants County, Keicher, Imiolo, Granville, Milbrandt, Hediger, Bauer, Simonick, Feggans, Hartman, and Jane Doe Supervisory Officials)

89. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

90. Defendants, acting under color of state law, intentionally discriminated against Plaintiff on the basis of his race with respect to the making, performance, modification, and termination of his employment contract, and the enjoyment of all benefits, privileges, terms, and conditions of that contractual relationship.

91. This discrimination included, but was not limited to, subjecting Plaintiff to a hostile work environment, retaliatory investigation, false arrest, malicious prosecution, and wrongful termination, in part due to his race and his reporting of racially discriminatory conduct.

92. As a direct and proximate result of this racial discrimination, Plaintiff suffered damages as set forth above.

## SEVENTH CAUSE OF ACTION

(Conspiracy to Violate Civil Rights — 42 U.S.C. § 1985(3))

(Against Defendants Keicher, Imiolo, Granville, Milbrandt, Hediger, Bauer, Haggerty, John Doe Assistant District Attorney #2, and Hartman)

93. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

94. The individual Defendants conspired together for the purpose of depriving Plaintiff, either directly or indirectly, of the equal protection of the laws, or of equal privileges and immunities under the laws.

95. The conspiracy was motivated by a class-based, invidiously discriminatory animus against Plaintiff due to his race and/or his opposition to racially discriminatory conduct.

96. In furtherance of the conspiracy, one or more of the conspirators committed acts that resulted in injury to Plaintiff's person or property or deprived him of having and exercising a right or privilege of a citizen of the United States.

97. As a direct and proximate result of this conspiracy, Plaintiff suffered damages as set forth above.

EIGHTH CAUSE OF ACTION

(Violation of New York State Human Rights Law § 296(7) — Retaliation)

(Against Defendants County, Keicher, Imiolo, Granville, Milbrandt, Hediger, Bauer, Simonick, Feggans, Hartman, and Jane Doe Supervisory Officials)

98. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

99. Plaintiff engaged in protected activity under the New York State Human Rights Law by opposing practices forbidden by the NYSHRL, to wit, by reporting Defendant Keicher's use of racial and homophobic slurs.

100. Defendants were aware of Plaintiff's protected activity.

101. As a direct result of his protected activity, Defendants subjected Plaintiff to adverse employment actions, including but not limited to a hostile work environment, retaliatory investigation, false arrest, malicious prosecution, and termination.

102. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered damages as set forth above.

NINTH CAUSE OF ACTION

(Violation of New York State Human Rights Law § 296(1) — Hostile Work Environment)

(Against Defendant County)

103. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

104. As a person of color, Plaintiff is a member of a protected class under the NYSHRL.

105. Plaintiff was subjected to unwelcome harassment based on his race and perceived sexual orientation, including being called a "Nigger" and a "fagot" by Defendant Keicher.

106. This harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive and hostile work environment.

107. The County is liable for this hostile work environment because it was created by one of its employees, and upon being notified of the conduct, the County not only failed to take prompt and appropriate corrective action but instead engaged in a campaign of retaliation against the Plaintiff who reported the conduct.

108. As a direct and proximate result of this hostile work environment, Plaintiff suffered damages as set forth above.

TENTH CAUSE OF ACTION

(Violation of New York State Human Rights Law § 296(6) — Aiding and Abetting)

(Against Defendants Keicher, Imiolo, Granville, Milbrandt, Hediger, Bauer, Simonick, Feggans, Haggerty, John Doe Assistant District Attorney #2, Hartman, and Jane Doe Supervisory Officials)

109. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

110. Defendant County, by and through its agents and employees, subjected Plaintiff to unlawful discriminatory practices, including retaliation and a hostile work environment, in violation of the NYSHRL.

111. The individual Defendants knew of the unlawful discriminatory practices and actually participated in the conduct giving rise to the violations, thereby aiding, abetting, inciting, and/or coercing the unlawful conduct.

112. As a direct and proximate result of the individual Defendants' aiding and abetting of the unlawful discriminatory practices, Plaintiff suffered damages as set forth above.

ELEVENTH CAUSE OF ACTION

(Violation of New York Civil Service Law § 75-b — Retaliation)

(Against Defendant County)

113. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

114. Plaintiff, a public employee, disclosed to a governmental body information regarding a violation of law, rule, or regulation by Defendant Keicher, which Plaintiff reasonably believed to be true and to constitute an improper governmental action.

115. As a direct result of this disclosure, Defendant County took an adverse personnel action against Plaintiff, including the termination of his employment on or about August 19, 2024. The retaliatory investigation, arrest, and prosecution of Plaintiff further evidence the County's retaliatory motive and are actionable as set forth in Plaintiff's federal causes of action.

116. As a direct and proximate result of this unlawful retaliation, Plaintiff suffered damages as set forth above.

TWELFTH CAUSE OF ACTION

(State Law Claim — False Imprisonment)

(Against Defendants Imiolo, Granville, Milbrandt, Bauer, Simonick, Hediger, and County)

117. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

118. Defendants intentionally confined Plaintiff against his will and without legal justification.

119. Plaintiff was aware of and harmed by this confinement.

120. As a direct and proximate result, Plaintiff suffered damages as set forth above.

THIRTEENTH CAUSE OF ACTION

(State Law Claim — Malicious Prosecution)

(Against Defendants Imiolo, Granville, Milbrandt, Hediger, Bauer, Haggerty, John Doe Assistant District Attorney #2, and County)

121. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

122. Defendants initiated and continued a criminal proceeding against Plaintiff.

123. The proceeding was terminated in Plaintiff's favor.

124. There was no probable cause for the criminal proceeding.

125. The proceeding was instituted with actual malice.

126. As a direct and proximate result, Plaintiff suffered damages as set forth above.

FOURTEENTH CAUSE OF ACTION

(State Law Claim — Abuse of Process)

(Against Defendants Imiolo, Granville, Milbrandt, Hediger, Bauer, Haggerty, John Doe Assistant District Attorney #2, and County)

127. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

128. Defendants regularly issued legal process, including criminal charges and subpoenas, compelling the performance or forbearance of some prescribed act.

129. Defendants were moved by a purpose to do harm without economic or social excuse or justification, namely to retaliate against Plaintiff for his protected speech and to cause his unlawful termination.

130. Defendants sought a collateral advantage outside the legitimate ends of the process, namely, to use the power of criminal subpoenas and the threat of continued prosecution not to secure a valid conviction, but to create a pretextual basis for Plaintiff's termination from the Sheriff's Department and to intimidate him and other officers from reporting misconduct in the future.

131. As a direct and proximate result, Plaintiff suffered damages as set forth above.

FIFTEENTH CAUSE OF ACTION

(State Law Claim — Intentional Infliction of Emotional Distress)

(Against All Defendants)

132. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

133. Defendants' conduct, including the coordinated campaign of racial slurs, official retaliation, fabrication of evidence, destruction of exculpatory evidence, false arrest, malicious prosecution, and wrongful termination, when viewed in its totality, was so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

134. Defendants acted intentionally or recklessly to cause severe emotional distress to Plaintiff.

135. Plaintiff did, in fact, suffer severe emotional distress as a direct and proximate result of Defendants' conduct.

136. As a direct and proximate result, Plaintiff suffered damages as set forth above.

SIXTEENTH CAUSE OF ACTION

(State Law Claim — Negligent Infliction of Emotional Distress)

(Against All Defendants)

137. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

138. Defendants owed Plaintiff a duty of care to refrain from conduct that would unreasonably endanger his physical safety or cause him severe emotional distress.

139. Defendants breached this duty through their negligent actions and omissions as described herein, creating an unreasonable risk of causing, and actually causing, emotional distress to Plaintiff.

140. Plaintiff suffered serious and verifiable emotional distress as a direct and proximate result of Defendants' negligence.

141. As a direct and proximate result, Plaintiff suffered damages as set forth above.

SEVENTEENTH CAUSE OF ACTION

(State Law Claim — Defamation (Libel and Slander))

(Against All Defendants)

142. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

143. Defendants made false and defamatory statements about Plaintiff to third parties, including but not limited to statements accusing him of criminal conduct and unfitness for his position.

144. These statements were made with knowledge of their falsity or with reckless disregard for their truth, and constituted libel and/or slander per se as they imputed criminal conduct and injured Plaintiff in his profession.

145. As a direct and proximate result, Plaintiff's reputation was damaged, and he suffered other damages as set forth above.

EIGHTEENTH CAUSE OF ACTION

(State Law Claim — Negligent Hiring, Training, Retention, and Supervision)

(Against Defendant County)

146. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

147. Defendant County owed a duty to members of the public, including Plaintiff, to properly hire, train, retain, and supervise its employees, including the individual Defendants.

148. The County knew or should have known of the propensities of its employees, including Defendant Keicher and the other individual Defendants, to engage in the type of misconduct alleged herein, or was negligent in failing to discover such propensities.

149. The County breached its duty by failing to adequately hire, train, retain, and supervise its employees, thereby causing the violations of Plaintiff's rights and the resulting damages.

150. As a direct and proximate result of this negligence, Plaintiff suffered damages as set forth above.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Niko Carter respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where appropriate, for the following relief:

A. Compensatory damages in an amount to be determined at trial, for past and future pecuniary losses, emotional distress, pain and suffering, humiliation, damage to reputation, and other non-pecuniary losses;

B. Punitive damages against the individual Defendants in their individual capacities in an amount to be determined at trial, for their malicious, willful, reckless, and callous disregard of Plaintiff's rights;

C. Equitable relief, including but not limited to reinstatement to his former position with full back pay, benefits, and seniority, or front pay in lieu thereof;

D. Attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. § 1988 and any other applicable statutes, including the New York State Human Rights Law;

E. Pre-judgment and post-judgment interest as allowed by law; and

F. Such other and further relief as this Court deems just and proper.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 20, 2026
Rochester, New York

Respectfully submitted.

/s/ David S. Stern
David S. Stern, Esq.
45 Exchange Blvd., Suite 400
Rochester. New York 14614
Telephone: (585) 232-4724
Email: dstern@elliottstern.com

/s/ Christopher D. Monna
Christopher D. Monna, Esq.
45 Exchange Blvd., Suite 400
Rochester, New York 14614
Telephone: (585) 698-6951
Email: chris@monnalaw.com
*Attorneys for Plaintiff Niko Carter*